UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| STARR INDEMNITY AND LIABILITY COMPANY, dba STARR INSURANCE COMPANIES as Subrogee of GLF AIR, LLC., and 60-206, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>SIGNATURE FLIGHT SUPPORT CORPORATION, a Nevada corporation; SIGNATURE FLIGHT SUPPORT, LLC, a Nevada limited liability company; SIGNATURE FLIGHT SUPPORT OF NEVADA, INC., a Nevada corporation; DOES 1 – X, inclusive, and ROW CORPORATIONS 1 – X, inclusive,<br><br>Defendants | Case No. 3:22-cv-00179-LRH-CLB<br><br>ORDER |

Before the Court is Plaintiff Starr Indemnity and Liability Company's ("Starr") Motion to Remand to State Court. ECF No. 18. Signature Flight Support, LLC ("Signature") opposed the motion (ECF No. 21) and Starr replied to the opposition (ECF No. 26). Also before the Court is Signature's Motion for Intradistrict Transfer of Venue to the Southern Division. ECF No. 33. Starr opposed the motion (ECF No. 34) and Signature replied to the opposition (ECF No. 38). For the reasons articulated herein, the Court denies Starr's Motion to Remand and grants Signature's Motion for Transfer. Although Signature's Motion for Transfer to the Southern Division is granted, this action shall remain before the current presiding District Court and Magistrate Court judges, as explained below.

///

///

1

## I.  BACKGROUND

In May of 2019, a 2000 Bombardier 60 Lear Jet ("Lear Jet") parked at the Las Vegas airport was hit and damaged by another plane being towed by Signature employees. ECF No. 18 at 3. Starr insured the Lear Jet and paid the following post-accident costs to the policy holder: $61,277.31 in repair damages, and $279,413.23 in rental aircraft expense and use costs. *Id.* In December of 2019, Starr demanded Signature pay for the post-accident costs it incurred. *Id.* The demand included sworn proof of loss statements which named "Starr Indemnity & Liability Company" as the insurer. ECF No. 18-10 at 7. Signature rejected the demand. ECF No. 18 at 3.

On January 31, 2022, Starr filed its original complaint in State court alleging that Signature negligently cared for and maintained the Lear Jet and seeking declaratory relief regarding a parking waiver card ("Landing Card") the parties executed in Las Vegas that effectively absolved Signature of tort liability should the Lear Jet be damaged. *See generally*, ECF No. 18-1. The complaint named "Starr Insurance Companies" as plaintiff, included a broad description of Starr Insurance Companies' business, and named five defendants: (1) Signature Flight Support Corporation; (2) Signature Flight Support, LLC; (3) Signature Flight Support of Nevada, Inc.; (4) DOES I–X, inclusive; and (5) ROE Corporations I–X, inclusive. *Id.* at 1. Signature was served with the original complaint on March 8, 2022. ECF No. 18-6 at 7, 11.

On March 21, 2022, Signature's counsel emailed Starr's counsel and asked for clarification on who the proper plaintiff was because Signature could not find business registration information for "Starr Insurance Companies" in Nevada or elsewhere. ECF No. 18-8 at 2. Signature's counsel also conveyed its belief that "Starr Indemnity & Liability Company" was the proper plaintiff because that entity was listed on the sworn proof of loss statements it received as part of the December 2019 demand. *Id.* at 2–3. Finally, Signature's counsel informed Starr's counsel that "Signature Flight Support, LLC" was the only proper defendant in the matter because "Signature Flight Support Corporation" had been converted into "Signature Flight Support, LLC," and "Signature Flight Support of Nevada, Inc.," had been merged into "Signature Flight Support, LLC," long before Starr filed the original complaint. *Id.* at 2. On March 22, 2022, Starr's counsel replied to the email and agreed to file an amended complaint. *Id.*

Starr's counsel emailed an amended complaint to Signature's counsel on March 28, 2022. *See generally*, ECF No.18-9. The amended complaint named "Starr Indemnity & Liability Company" as the plaintiff, but all three Signature defendant entities remained. *Id*. at 6. Starr's counsel refused to dismiss any defendants because counsel checked the Nevada Secretary of State website which listed the Signature Flight Support of Nevada, Inc.-Signature Flight Support, LLC, merger as "never completed." *Id*. at 2.

On April 20, 2022, Signature filed a notice of removal from the Second Judicial District Court for the State of Nevada based on diversity jurisdiction. *See generally*, ECF No. 1. The case was randomly assigned to the Honorable James C. Mahan of Nevada's unofficial Southern Division until it was ordered "administratively closed and transferred to the unofficial northern division in Reno for further action per LR IA 1-8(c)[.]" ECF No. 5; *See* LR IA 1-8(c) (requiring filings and proceedings to be held in the division of the court in which the original case was filed); *see also* 28 U.S.C. § 1441(a) (requiring civil actions brought in state court be removed to the District Court embracing the state court where the action is pending). The Honorable Larry R. Hicks and Magistrate Judge Carla L. Baldwin of the unofficial Northern Division were randomly reassigned the matter for all further proceedings. ECF No. 17.

Starr filed its Motion to Remand on May 9, 2022, (ECF No. 18), and Signature filed its Motion for Intradistrict Transfer on August 29, 2022 (ECF No. 33). The Court addresses these motions in turn below.

**II.   LEGAL STANDARD**

**A. Motion to Remand**

Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). A district court has original jurisdiction over civil actions where the suit is between citizens of different states and the amount in controversy, exclusive of interests and costs, exceeds $75,000.00. 28 U.S.C. § 1332(a).

///

3

"[T]he removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds $[75],000.00." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). In determining whether the defendant has established that diversity jurisdiction exists, the district court must first consider whether it is "facially apparent" from the complaint that the jurisdictional amount in controversy requirement is met. *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir.1997). Generally, courts apply a mechanical test to determine whether the amount in controversy requirement has been met: "[t]he district court simply reads the ad damnum clause of the complaint to determine whether the matter in controversy exceeds" $75,000.00. *Id.* at 375. If it is apparent to the court that the claim was made in good faith, then the value of the claim controls for purposes of removal, unless it appears "to a legal certainty that the plaintiff cannot recover the amount claimed." *Id.*

Removal of a case to district court may be challenged by motion and a federal court must remand a matter if there is a lack of jurisdiction. *See generally*, 28 U.S.C. § 1441. Removal statutes are construed restrictively and in favor of remanding a case to state court. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-109 (1941); *see also, Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

**B. Motion to Transfer**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "Under § 1404(a), the district court has discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quotation omitted). In making this assessment, courts normally "weigh the relevant [private and public-interest] factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 581 (2013) (quoting 28 U.S.C. § 1404(a)) (listing common private and public-interest factors in n. 6); *see also Jones*, 211 F.3d at 498–499 (listing other common factors).

4

The moving party bears the burden of establishing that the proposed district is a more appropriate forum for the action. *Operation: Heroes, Ltd. v. Procter & Gamble Prods., Inc.*, 903 F. Supp. 2d 1106, 1111 (D. Nev. 2012).

### III. DISCUSSION

#### A. Motion to Remand

In its removal notice, Signature alleges that (1) it is facially apparent from the complaint that the amount in controversy exceeds the statutory minimum of $75,000; (2) the only proper defendant, Signature Flight Support, LLC, consents to removal; and (3) complete diversity of citizenship exists because Starr is a citizen of Texas and New York while Signature Flight Support, LLC's, members are citizens of Delaware, Florida, and the United Kingdom. *See generally*, ECF No. 1.

In its motion to remand, Starr argues that Signature failed to (1) meet its burden of establishing diversity jurisdiction, (2) timely remove the matter within 30-days of receipt and service of summons of the original complaint, and (3) meet its "heavy" burden of establishing fraudulent joinder.[1] ECF No. 18 at 1–2. Starr argues that Signature had initial notice regarding Starr's corporate citizenship from the sworn proof of loss statements it received in December of 2019, and the March 21, 2022, email correspondence. *Id.* at 9. Starr states its belief that the matter first became removable on March 8, 2022, when Signature was served with the original complaint and concludes that Signature's April 20, 2022, removal was untimely. *Id.*

In response, Signature argues that the four corners of Starr's original complaint did not "establish a basis for removal." ECF No. 21 at 4. Signature further argues that when the four corners of a complaint do not establish a basis for removal, the 30-day removal clock does not start until "after the defendant receives an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* (quotation omitted). Signature also argues that the sworn proof of loss statements are not considered "other paper" for removal purposes because receipt predated the complaint. *Id.* at 5. Lastly, Signature

---

[1] Because the Court finds that Signature's removal was both proper and timely, the Court does not address the issue of fraudulent joinder.

alleges that the defendant's subjective knowledge of removal grounds does not trigger the removal clock. *Id.* at 4. Signature concludes that the matter first became removable on March 28, 2022, when it received the amended complaint containing the proper plaintiff's name because diversity could be ascertained from independent research. *Id.* at 5. In reply, Starr admits that neither the original nor amended complaint established its corporate citizenship. ECF No. 26 at 2, 4. However, Starr maintains that Signature knew who the proper plaintiff was since December of 2019. *Id.*

### 1. Complete Diversity Existed When Starr Filed its Original Complaint

The Court's jurisdiction over diversity cases is limited to when there is diversity of citizenship between the parties, no defendant is a citizen of the state where the action was filed, and the amount in controversy exceeds $75,000 exclusive of interest and costs. 28 U.S.C. § 1441(b)(2); 28 U.S.C. § 1332(a). It is clear to the Court from the face of the complaint that the amount in controversy exceeds $75,000. ECF No. 1-2 at 4–6.

Diversity of citizenship is determined, and must exist, at the time the complaint is filed. *Strotek Corp. v. Air Transp. Ass'n. of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002). Here, diversity of citizenship must be determined as of January 31, 2022, when Starr filed its original complaint in State court. The parties dispute whether complete diversity exists in this case. It is Signature's belief that the only proper defendant in the matter is Signature Support Flight, LLC, because of the business entity conversion and merger that took place prior to the filing of the original complaint. ECF No. 1 at 4–6. Starr argues that the State of Nevada did not fully recognize the alleged merger, as evidenced by Starr's Nevada Secretary of State website check, and that Signature Flight Support of Nevada, Inc.'s existence precludes complete diversity in this case. ECF No. 18 at 11.

"When a civil action is filed after a merger takes place, the surviving entity's domicile is determinative of jurisdiction." *Garand v. J.P. Morgan Chase Bank, N.A.*, Case No. 3:10-CV-0212-LRH-VPC, 2010 WL 2695666, at *1 (D. Nev. July 2, 2010); *see also, Meadows v. Bicrodyne Corporation*, 785 F.2d 670, 672 (9th Cir.1986). Signature Flight Support Corporation was converted into Signature Flight Support LLC in December of 2019. *See* ECF Nos. 1-5, 1-6. Here, the citizenship of the non-surviving entity, Signature Flight Support Corporation, is not considered

6

for diversity purposes. Further, Signature Flight Support of Nevada, Inc., was merged with Signature Flight Support, LLC, in April of 2021. *See* ECF No. 24. The merger is supported by documentation issued by Nevada's Secretary of State and dated April 2021. *See* ECF No. 25. Although it appears a clerical mistake was made on the Nevada Secretary of State's website, the dated documents clearly show the merger took place in April 2021. Therefore, Signature Flight Support of Nevada, Inc., ceased to exist as a legally entity at the time Starr filed its original complaint. The Court will not consider its citizenship for purposes of diversity. Further, "the citizenship of defendants sued under fictitious names shall be disregarded[,]" which means defendants "DOES I–X, inclusive," and "ROE Corporations I–X, inclusive," in the current matter are also disregarded for purposes of diversity. 28 U.S.C. § 1441(b)(1).

This leaves Starr and Signature Flight Support, LLC, as the only two entities for which the Court must determine citizenship. A corporation is deemed to be a citizen of the state in which it has been incorporated and where it has its principal place of business. 28 U.S.C. § 1332(c)(1); *see also JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd.*, 536 U.S. 88, 92 (2002). The Court finds that Starr, a corporation, is a citizen of Texas, its state of incorporation, and New York, its principal place of business. *See generally*, ECF No. 1-3 at 7, 14.

A limited liability company is a citizen of all states where its members are citizens. *Johnson v. Columbia Propes. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). Signature Flight Support, LLC, is a limited liability company whose sole member, Signature Aviation USA, LLC, is a Delaware limited liability company. ECF No. 24 at 67. Signature Aviation USA, LLC, has two members: Signature Aviation USA Holdings, Inc., which is incorporated in Delaware and maintains its principal place of business in Florida, and BBA Aviation Finance, which is a United Kingdom entity maintaining its principal place of business in England. *Id.* at 73, 77. For purposes of diversity, Signature is a citizen of Delaware, Florida, and the United Kingdom.

The Court finds that complete diversity existed between the parties in this matter when the original complaint was filed as Starr is a corporate citizen of Texas and New York, and Signature is a citizen where its members are citizens: Delaware, Florida, and the United Kingdom.

///

## 2. Signature's Removal was Timely and Proper

Timeliness of removal is governed by 28 U.S.C. § 1446(b) which establishes two distinct pathways for removal. *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1093 (9th Cir. 2021); *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 692 (9th Cir. 2005). 28 U.S.C. § 1446(b)(1) creates the first pathway: "notice of removal of a civil action [ . . . ] shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading[.]" 28 U.S.C. § 1446(b)(1). The first pathway's removal clock starts to run "only when that [initial] pleading affirmatively reveals on its face the facts necessary for federal court jurisdiction." *Harris*, 425 F.3d at 690 (quotation omitted). When grounds for removal are clear from the complaint, the 30-day removal clock begins the day the complaint is received. 28 U.S.C. § 1446(b)(1); *Dietrich*, 14 F.4th at 1090. Only the four corners of the complaint dictate removability, not the defendant's subjective knowledge or a duty to make further inquiry. *Harris*, 425 F.3d at 694.

Here, the original complaint does not name the proper plaintiff and includes only a loose description of the improper plaintiff's business activity. The four corners of Starr's original complaint do nothing to affirmatively reveal the facts necessary for removal. Further, Ninth Circuit caselaw does not base removal on subjective knowledge or a duty to inquire. *See Id.* Simply, no grounds for removal are evident from the face of Starr's original complaint and removal is not based on Signature's subjective knowledge or a duty to inquire. Because the Court finds that no grounds for removal were evident from the original complaint, the first pathway's 30-day removal clock did not start when Signature was served on March 8, 2022.

"[I]f the case stated by the initial pleading is not removable," then the second removal pathway can be triggered and "a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). The defendant must receive a *subsequent* amended pleading, motion, order, or other paper, from which grounds for removal may be ascertained. *Dietrich*, 14 F.4th at 1091 (emphasis added). In the Ninth Circuit, "ascertain[able]" means "unequivocally clear and certain." *Dietrich*, 14 F.4th at 1093. Therefore, the second pathway's 30-day removal clock

8

will not start to run until an amended pleading, motion, order, or other paper makes grounds for removal unequivocally clear and certain.

Here, two forms of "other paper" potentially place Signature on notice of removability and trigger the second pathway's 30-day clock: (1) the sworn proof of loss statements from December of 2019, and (2) the emails the parties exchanged throughout March of 2022. The Court finds that neither make removability unequivocally clear and certain. The sworn proof of loss statements were not received subsequent to the complaint because Signature received them two years before any complaint was filed. Further, the emails the parties exchanged throughout March of 2022, certainly do not meet the unequivocally clear and certain standard adopted in this Circuit. At no point in the email exchanges does Starr confirm that "Starr Indemnity & Liability Company" is the correct plaintiff. While there may be clues, clues are not enough to meet the heightened unequivocally clear and certain standard that requires "a greater level of certainty or that the facts supporting removability be stated unequivocally." *Dietrich*, 14 F.4th at 1093 (quotation omitted). The Court finds that the second pathway's removal clock did not start because of the proof of loss statements or shared emails.

The amended complaint made it unequivocally clear and certain who the proper plaintiff was in the matter. This allowed Signature to independently research plaintiff's business registration information, although it had no affirmative duty to do so. From that independent research, Signature was able to ascertain removability. The Court finds that the amended complaint, received on March 28, 2022, to be the first "amended pleading, motion, order or other paper" from which diversity could be unequivocally clear and certain. The second pathway's 30-day removal clock was triggered when Signature received the amended complaint on March 28, 2022. Therefore, Signature's notice of removal filed on April 20, 2022 was timely.

Because Signature's April 20, 2022, removal notice was both timely and proper, because complete diversity exists between the parties, and because the amount in controversy exceeds the statutory minimum, the Court denies Starr's motion to remand.

///

///

**B. Motion to Transfer**

There is dispute between the parties as to which statute governs Signature's motion to transfer. Signature's claims that its motion to transfer is based on 28 U.S.C. § 1404(a). ECF No. 33 at 1–2. Starr argues that, upon removal, the proper venue statute to apply is 28 U.S.C. § 1441(a). ECF No. 34 at 2.

Starr is correct that venue of removed actions is dictated by 28 § U.S.C. 1441(a), which requires state court claims be removed to the district court "embracing" the state court where the action is pending. 28 § U.S.C. 1441(a). However, Signature's motion to transfer is not an attempt to cure improper venue. Rather, Signature's motion is an independent attempt to transfer the matter to a venue that serves both convenience and fairness as it is premised on 28 U.S.C. § 1404(a). One of the Ninth Circuit's seminal cases on transfers was also a removed action where an independent motion to transfer was premised on 28 U.S.C. § 1404(a), not 28 U.S.C. § 1441(a). *Jones,* 211 F.3d at 493. Mindful that venue for improper removal is dictated by 28 U.S.C. § 1441(a), this Court finds that independent motions to transfer premised on 28 U.S.C. § 1404(a) should be decided according to that statute.

When transfer is premised on 28 U.S.C. § 1404(a), there are two requirements: "(1) that the district to which defendants seek to have the action transferred is one in which the action might have been brought, and (2) that the transfer be for the convenience of parties and witnesses, and in the interest of justice." *Operation: Heroes,* 903 F. Supp. 2d at 1111. Those two requirements are addressed below.

1. The Action Could Have Been Brought in the Unofficial Southern Division

Signature alleges that transfer to the unofficial Southern Division is proper because the action could have been brought there originally. ECF No. 33 at 4. Specifically, Signature claims that the Southern Division was the more proper venue to bring the original complaint because Las Vegas is indisputably where contract performance was due and where the damage occurred to the Lear Jet. *Id.* at 5. Signature also cites Local Rule IA 1-8(a), that requires Starr to file its civil claim with the clerk's office in the unofficial division where the action allegedly arose. *Id.* In opposition, Starr argues that Signature was "amenable to jurisdiction and service of process in either the

10

Northern or Southern divisions." ECF No. 34 at 3. In reply, Signature argues that where Signature accepted service does nothing to disprove that the action could have been brought in the Southern Division originally. ECF No. 38 at 4.

A civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated[.]" 28 U.S.C. § 1391(b)(2). Here, both parties agree that the events giving rise to this claim occurred at the airport in Las Vegas, Nevada, which is in the Southern Division. The Landing Card was executed in Las Vegas, and the Lear Jet was stored and damaged there. ECF No. 33 at 5; ECF No. 34 at 4. Under this statute, Starr may have originally brought the action in the unofficial Southern Division where a substantial part of the events giving rise to the claim occurred.

2. Transfer Serves Convenience and Justice After a Balancing of the *Jones* Factors

In its motion, Signature claims that relevant factors weigh heavily in favor of transfer. ECF No. 33 at 4. Signature supports its claim with the following: (1) all relevant agreements and events giving rise to the lawsuit occurred in Las Vegas, (2) no parties or witnesses have any ties to Northern Nevada relating to the case, (3) Starr is not a resident of Nevada, and (4) the Southern Division is more convenient for potential witnesses. *Id.* 6–9. In response, Starr argues that Signature failed to sufficiently establish inconvenience and that Starr's choice of forum is entitled to substantial weight because the defendants are Nevada corporations or limited liability companies. ECF No. 34 at 2–4. In reply, Signature argues that Starr failed to address the relevant transfer factors, constituting "consent to the granting of the motion." ECF No. 38 at 2.

The parties agree that Signature bears the burden of establishing that the unofficial Southern Division is a more appropriate forum. Signature's burden requires that it make a "strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). To determine whether the moving party has satisfied its burden, courts in the Ninth Circuit balance eight factors:

///

///

11

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones*, 211 F.3d at 498–499.

Background consideration is also afforded to forum selection clauses as well as relevant public policy of the forum state when deciding motions to transfer venue under § 1404(a). *Id.*

After balancing these eight factors, the Court finds that Signature has met its burden of demonstrating that transfer will serve the convenience of parties and witnesses as well as the interest of justice. Most, if not all, contacts the parties have with Nevada take place at the Las Vegas airport which acts as the hub for both parties' Nevada-based business. Most importantly, the contacts giving rise to this cause of action occurred in the Southern Division. The Landing Card at the heart of the declaratory relief claim was executed in Las Vegas, and the Lear Jet at the heart of the negligence claim was hit and damaged there. Clearly, the contacts giving rise to Starr's cause of action are entirely located in Southern Nevada. Although the parties disagree over to what extent, transfer will undeniably impact witness availability in a favorable manner as the events witnessed occurred in Las Vegas.

The only adverse factor of note is Starr's choice of forum. Typically, courts give deference to a plaintiff's choice of venue. *Ed. Planeta Mexicana, S.A. de C.V. v. Argov*, No. 2:11-CV-01375-GMN, 2012 WL 3027456, at *5 (D. Nev. July 23, 2012). However, less deference is given when "plaintiff's choice is not its residence or where the forum lacks a significant connection to the activities alleged in the complaint." *Id.* Starr has offered no support to counter Signature's arguments that (1) Starr has no real connection to Northern Nevada, apart from its counsel, and (2) Starr's claims center around events and contracts executed in Southern Nevada. The Court finds that less deference should be awarded to Starr's forum selection because it is not a resident of Nevada, and the Northern Division lacks significant connection to the complaint's alleged activities.

12

Because this matter could have originally been brought in the unofficial Southern Division and because the balancing of *Jones* factors suggest transfer will serve justice and convenience, the Court grants Signature's motion to transfer. However, this action will remain before the presiding Judge and the presiding Magistrate Judge as both are familiar with this action. For the convenience of the Court, parties and counsel, Magistrate Judge Baldwin routinely conducts pre-trial hearings through videoconferencing. However, trial venue will be in Las Vegas and dispositive matters will remain before Judge Hicks.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Starr's Motion to Remand (ECF No. 18) is DENIED.

IT IS FURTHER ORDERED that Signature's Motion for Intradistrict Transfer of Venue (ECF No. 33) is GRANTED. The Clerk of the Court shall transfer venue to the unofficial Southern Division but keep the matter before this unofficial Northern Division Court. Non-dispositive matters shall remain before Magistrate Judge Carla Baldwin.

IT IS SO ORDERED.

DATED this 1st day of December, 2022.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE